May it please the court, my name is Quinn McAlis and I'm here on behalf of the appellant Lester Brown. We've presented three issues on appeal and I'd like to sort of start in reverse order here with the sufficiency of the evidence arguments. The first issue then is whether the government presented sufficient evidence to prove that Mr. Brown committed the underlying cyber-stalking offense as required by 18 U.S.C. section 2261A, which requires the use of the mail, any interactive computer service or electronic communication service, electronic communication system, or any other facility of interstate or foreign commerce to engage in a course of conduct that would reasonably place the victim here, Christopher Harris, in fear for his life or in fear that he would be subject to serious injury. Now we admit that the government presented overwhelming evidence that a GPS tracker was used. It was purchased and registered by Mr. Brown and it was placed on Christopher Harris' vehicle and then a website was used to track the movements of that vehicle and that Mr. Brown accessed the website to follow the movements of that vehicle. However, it is our position that it is not sufficient under the statute or indeed the jury instructions that were given to show cyber-stalking. So the government presented evidence that Mr. Brown intended to place Harris under surveillance but that fact alone is not or does not show a course of conduct that would place Harris in fear of death or serious injury, which is what is required. The course of conduct that the government must prove would necessarily be whatever it was that put Harris in fear that Mr. Brown intended to kill him or seriously injure him. That Mr. Brown used a GPS tracker and accessed a website is not by itself going to place Mr. Harris in fear of death or great bodily injury. Because just placing a tracker on someone's car and using it to watch their movements would not by itself be reasonably expected to cause that kind of emotional distress as required by the statute. For example, there was some testimony that a separate tracker was found at some other point by Harris and that testimony indicated that he believes that that might have been a police tracker. But wasn't his fear also tied to the murder of Mr. Cobbins and his knowledge of that and maybe even some threats suggesting that the same would happen to him? I think that's the point I'm trying to get at is that it's the threats themselves. It's the communication of that threat that is what would show the course of conduct. And the government spent quite a bit of time at trial showing that the GPS tracker accessed different ways of communicating with the tracker or the website and that Mr. Brown accessed that. But in terms of the actual communication itself, there was testimony that, in our position was hearsay testimony, that Harris received communications over social media indicating that there was a threat to his life by Mr. Brown. However, there was no supporting evidence to show that those messages actually existed, that they were transmitted over a communication facility. These were all Snapchat messages. So there wasn't any evidence presented at trial that Snapchat itself was one of these kinds of facilities of interstate commerce. There was no actual presentation of the messages. There was no presentation of the fact that Mr. Brown had a Snapchat account or that Harris had a Snapchat account. There was no testimony that, I'm sorry, there was no evidence that showed that Mr. Brown had used these social media types of platforms to communicate with Mr. Harris. It was solely related to the GPS tracker and how that worked and how that accessed a facility of interstate commerce. But wasn't that the means by which he sort of communicated to Harris that I'm watching you? Wouldn't that cause some, potentially couldn't a jury find that, cause some fear? I think the point that I'm trying to make is that there has to be some sort of additional communication that, yes, I'm watching you. But that's the part of the course of conduct that has to be shown. Because just the tracking by itself, without more, if Harris were to find a tracker on his car without having received any sort of messages from Mr. Brown, how would he know, A, that it was Mr. Brown and the purpose behind it? And so that's why we're focused on the course of conduct being the communication, the message, these supposed Snapchat messages, where there was no evidence beyond what we believe is hearsay evidence that these messages actually existed. So I can turn to that hearsay evidence, which we believe was also admitted in error against Mr. Brown. Most specifically, there was testimony from a witness indicating that he had been told by Harris that Harris had received a message from Mr. Brown. Again, there was no message that was ever presented saying, this is the actual message that was sent. It was simply testimony from the witness saying, Harris once told me that, or told me that he received this message. There was testimony that there was a screen capture or a screenshot of that message, but again, that was never even presented. He was, that witness had been asked for it, I believe by the government, but that screen cap was never produced. So it's our position that that statement, that specific statement, which would show the course of conduct, that was an out-of-court statement that was used to show the truth of the matter, that Harris had received these communications from Mr. Brown. So is your first argument sort of dependent upon your second? In other words, that the course of conduct all came in through inadmissible hearsay? That's correct, yes. Yeah, they're all sort of kind of intertwined, which is another argument that we made, but yes, that would go towards, halfway towards, proving that Mr. Brown had engaged in this course of conduct by showing that this message had been used or had been sent over a communication facility. Just to be clear on that question, are you arguing that you have an independent, in other words, even if you lose all the hearsay arguments, there's still a lack of evidence? That's correct, because it really is just that message. It's those messages that were allegedly sent over Snapchat that formed the basis of this communication that would be necessary to not just show that there was a course of conduct, but also that it created in Harris the state of mind that's necessary for the statute. So, yes, without that hearsay evidence, without any sort of evidence of messages. But my question is, with all that hearsay, are you still saying there's no lack of evidence? Yes, because the government then, if that hearsay came in, there would be no additional proof to show that Snapchat itself was a community, I'm sorry, a facility of interstate commerce, as they did with the GPS tracking information. All they really have is testimony from one of the witnesses who says that he had seen this message, how Snapchat works, but that person was not an expert. He was just a layperson. So they would not have satisfied the requirements of showing that these were messages that were sent through a facility of interstate commerce. So it's your position that the Snapchat messages, that has to be the electronic communication system under the elements of the offense, and that you're thinking that the government has shifted that to all on the GPS? That's correct, yes. Yes, but the communication itself, there has to be some sort of expression of the threat. So can the course of conduct not include putting the tracker on the car? In other words, could this all be the course of conduct? Both what you're calling the inadmissible hearsay, but also the action of putting the tracker on? I think that the way that the instruction reads, talks about surveillance, placing someone under surveillance, but that goes towards the intent that's required by Mr. Brown. It is not part of the course of conduct language. And even, I believe the government cites a case that says that the course of conduct does not, all of the parts of the course of conduct do not have to include some sort of use of a communication facility. But even in that case, it's two threats that are identified there. So there's two communications that are identified, one of which is in person, but the other of which is through a cell phone. And even if the hearsay statements, especially the one that was about this receiving this message, even if that is being used to demonstrate Christopher Harris' state of mind at the time that he received the message, that statement does not actually show state of mind. It's not showing anything about his mental state at the time. It's simply indicating that he'd received a message. With respect to another statement that we had raised from another witness that we believed was hearsay, this, that particular statement comes a little bit closer to what is meant under 803, subsection 3, because the statement in question there was that Harris expressed that he was worried that someone was trying to kill him. Let me ask you this, Snapchat, what was their testimony about the source of that? Was it the defendant? The source of the Snapchat? Yes, the witness testified that it was the defendant who had sent the Snapchat message to the victim. So wouldn't that be an admission? Well, it would be, the witness would have said that this, it would have been an admission, but then there would have been a separate problem of it was still being communicated through a third person. So it's a double hearsay problem.  Okay. With respect to the statement that Harris had communicated to another person that he believed someone was trying to kill him, that does come closer to a state of mind statement. But the problem with that statement, it was never connected to anything that would provide the contemporaneousness that was required by the rule here. The key indicator of reliability of this kind of statement is that the statement is made with some kind of temporal connection between an event and the statement showing state of mind. But here we only had some sort of vague statement without any specifics of when Harris told this other witness about this specific worry. I see that I'm running into my rebuttal time here, so I'm going to ask if I could reserve the rest of my time.  Thank you.  May it please the court, Brian Casey on behalf of the United States. I have my daughter with me. I have my daughter with me. Those were the last words Christopher Harris said before he was murdered. How did that murder take place? That murder took place because Lester Brown put a tracker on his car tracked Harris repeatedly over the course of two months. And then finally found him, I guess at a vulnerable spot after Harris had picked his daughter, his eight-year-old daughter up from dance class and was taking her to her mother's house. That is enough right there to prove a violation. Lester, Mr. Brown submits that that's not enough. That something more needs to be proven. And the government proved a lot more and I can keep working back, but I wanted for the sake of the court to talk about what, what's sort of the minimal amount to be proven here. We need to start with intent. You can prove the crime through an intent to place someone on surveillance with the intent to murder or injure them. That's what Lester Brown did by attaching the GPS tracker. He placed Christopher Harris under surveillance with the intent to murder him. Which is what he did. Next with that intent, you have to engage in a course of conduct. That course of conduct has to use the internet and it has to involve two or more actions. Here we have Lester Brown, at least placing two different trackers over, over two months. Again, that's enough to status by this course of conduct. Lastly, that course of conduct has to give Mr. Harris has to reasonably cause substantial emotional distress. Mr. Brown has submitted that it is that someone placing a tracker on your car would not cause you substantial emotional distress. I think the jury could quite easily find that knowing or later learning that someone placed a tracker on your car would reasonably cause substantial emotional distress. Now we have a lot more evidence here. And here we have why this tracker caused substantial emotional distress. Because Lester Brown was also threatening Christopher Harris. He was threatening him in person. He was threatening him over the internet. And the specter that he was placing trackers on his car was causing Harris emotional distress. Causing him so much distress that Harris changed his behavior significantly. Again, Mr. Brown submits that without the Snapchat threats, there's no evidence that Mr. Harris had the requisite fear. You have to prove that it would reasonably likely cause fear. But the government actually proved the fear. The fear can be shown just through Mr. Harris's behavior. He moved to a different part of town. He moved to a place that he thought was safer. He moved to an apartment that had key card access because at that point he was fearing for his life and the life of his daughter. That's what he told multiple witnesses is what multiple witnesses observed through his behavior. So there is no hearsay objection to that. Do you have a double hearsay problem with respect to the Snapchat? We don't, Your Honor. And I think the issue there really goes back to this question of the continuing objection and what exactly that served and what exactly purpose that serves for the court. There's no double hearsay because Antoine Tolfrey, who was Harris's co-conspirator in the marijuana trade. I mean, I think that's fair to say. He said that he received the same snaps, same Snapchat messages that Harris received. So because they went directly to Tolfrey and in particular, Tolfrey said he personally received the message that had a picture of a Snapchat and a demand for $10,000 a month. I think that's factually enough to put the reasonable fear. And I think it's also enough to be part of this course of conduct. But it is also its statement of Mr. Brown directly to Tolfrey. The question then, and this is where I think in a timely objection would have helped clarify the testimony. The question is when Tolfrey testifies that he and Harris both received the messages, what was his source of knowledge for that? And that wasn't specifically objected to. So I think the jury could credit it and credit that he did know that they both received the messages. One thing that came out later during Cross is that Harris had shown Tolfrey a screenshot of one of the messages he received. Because Snapchat, as the testimony says, deletes the messages. So they weren't able to be preserved. So I think you have at least a corroboration of Tolfrey having seen the screenshot, but also his testimony that he received the same messages. And that he and Harris discussed what they both knew about something, that wouldn't be hearsay. That would just be the fact that they had discussions. So I don't think that there really is a hearsay problem. And as the government goes on in our brief, we don't think there's a sustainable hearsay objection anyway. But there's a lot of different statements after the fact that are objected to on hearsay grounds. And so I can walk through them for the court or I can refer to my brief on that. I have some questions about the conspiracy because he was convicted of the conspiracy and the actual substance offense, correct? That's correct, Your Honor. So you've got a couple of people, is it Pearson and Young, right?  And those are your co-conspirators for purposes of the trial, right? That's correct, Your Honor. And as I read their testimony, and putting aside their guilty pleas, they disavowed knowledge. They admitted to various times when they were with Brown during key points, but it seemed to me that the testimony was, but we didn't know what he was doing. When he asked me to toss out the backpack, I refused. We told him not to do this. How did the government get enough evidence on an agreement among those folks and not just the substantive count for Mr. Brown? I think we focus on two things, Your Honor. One, that the conspiracy was just for the cyberstalking. It was not for the resulting in death. So that piece of it, they could have been oblivious of. They just needed to know generally that Brown was using the internet to stalk. What is the evidence to show that one or both of them knew that this was a cyberstalking? Yeah, I think we focus on Young more than Pearson. I think notwithstanding their guilty pleas, as the evidence came out at trial, Pearson does not look much like a co-conspirator. But Young still does because he's engaged much earlier in the stalking. He's doing some surveillance for Brown. He's driving up to the Briarcliff area at Brown's request, found on Young's phone. It was one of the addresses that Harris frequents. Do you still have to link that, though, his knowing participation? Yeah, he's doing some things to help Brown. I just wonder if it linked it up, really. He still is sort of very resistant. I don't have anything against Harris. I don't know Harris. And it also kind of called into question, they're the guilty pleas, but there's an instruction. That's just for their credibility, right? And so, it's an odd position for the government to be in because they've got two people who have admitted, well, yeah, they both admitted to the conspiracy, did they not? When Young was a basic conspiracy. Young actually admitted to the substance of offense. And Pearson admitted to the conspiracy. And yet their testimony just did not. I don't know that a district court would have accepted their testimony at the trial as sufficient factual grounds to support their guilty pleas. They're very similar, actually. If you look at the factual basis in the guilty pleas, they're quite similar. I think the significant difference is the one area where what Young's guilty plea says and what Pearson testified to at trial versus what Young said at trial. Young, Pearson's testimony is that Young was on the phone tracking Harris that night. Young said, well, I gave my phone to Brown and he did the tracking. Well, Brown was driving. And so, I think the jury could certainly credit that at very least, Young knew his phone was being used in that moment to track Harris, if not the case that Young himself was tracking Harris. And that is enough to get to conspiracy, I believe. If there are... I'm sorry. Let me check my notes. There's a question about the state of mind evidence about Harris stating that he was afraid of Brown and that the circumstances were too vague. I think all that rule requires, the present state of mind requires is that someone be accurately conveying their state of mind in a circumstance where that's reliable. And as explained in the brief, that is more than met in this case. Is there a contemporaneousness problem with that testimony? It just has to be what your state of mind is in the moment. So, it is unlike present sense impression, for example, that requires you to, while you're perceiving something, report what your impression is. All that your state of mind exception is is that you're reporting what your state of mind is. It doesn't have to... The event that causes the state of mind doesn't have to be contemporaneous or, for that matter, even close in time. It's just not part of the rule. If there are no further questions, I have nothing further to present. Thank you. Hearing none, thank you, Mr. Casey. Ms. McAllis, Roboto? Thank you. I do want to make one quick point before I move on to the conspiracy issue. The testimony of these messages being deleted as soon as they're sent, that comes from a person, a user of Snapchat. It doesn't come from Snapchat itself. It's not something that is... The technical knowledge of how Snapchat works is not within that witness, Antoine Tollfrey's, knowledge base. But with two minutes left, I do want to address the issue of the conspiracy. To prove a conspiracy, the government has to show that there was an agreement between two or more people. And here, with respect to what Young actually admitted to, he said he didn't know Harris. He didn't know whose license plate he was writing down. He didn't know... He said that he was sent to go look for something specific, but he didn't know whose car he was looking for. He didn't know the specific address that he was being sent to, whose address that was. On the day of the shooting itself, Young stated that he didn't know why they were leaving this party to go on this car ride. And then when they subsequently arrived at a dance studio, he didn't know why they were driving to the dance studio. And it wasn't until there was some sort of statement from Mr. Brown that there was the person that they were looking for, that he understood, I guess, that there was something else going on here, besides just driving around. And he testified that when he did realize what was happening, that he said he wanted no part of whatever it was that Mr. Brown had planned. So at no point did either one of these witnesses indicate that they had made some sort of agreement with Mr. Brown to participate in this, even though Young... What about the use of the phone? Sorry to interrupt. I know you're running out of time. How about the use of the phone? There was sort of contradictory evidence of between the two, Pearson and Young, what or who was using the phone to try to track down Harris. How does that fit in? So there was no evidence. And I think specifically Young was asked whether he had ever gotten an account to track. And he did not. He said he did not. So the only evidence that was submitted about using the phone to track was through an account that was shown to be Mr. Brown's account. So it would be essentially... Wasn't there like an issue of using a phone? It sounds like, or it seems to me that the testimony was if someone else besides Mr. Brown was using the phone, it was really just holding the phone so that the movements could be seen by Mr. Brown. So, thank you. Thank you, Ms. McCallis. We appreciate your taking the CJA appointment as well. And thanks to both counsel for your appearance and arguments. Case is submitted.